[Cite as *State v. Jones*, 2013-Ohio-5791.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25780 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-3544 |
| v. | : | |
| | : | |
| BRANDON JONES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of December, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARCY A. VONDERWELL, Atty. Reg. #0078311, Finlay, Johnson & Beard Ltd., 260 North Detroit Street, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Brandon S. Jones appeals from his conviction and sentence, following a no-contest plea, upon one count of Possession of Cocaine in an amount less than five

grams, in violation of R.C. 2925.11(A), a felony of the fifth degree, and one count of Possession of Heroin in an amount equaling or exceeding ten unit doses, but less than fifty unit doses, in violation of R.C. 2925.11(A), a felony of the fourth degree.   Jones's assigned counsel has filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that she has not found any potential assignments of error having arguable merit.

{¶ 2}    By entry herein on October 3, 2013, we have afforded Jones the opportunity to file his own, pro se brief.   He has not done so.

{¶ 3}    After our independent review of the record required by *Anders*, we conclude that there are no potential assignments of error having arguable merit.   Accordingly, the judgment of the trial court is Affirmed.


## I.   Jones Is Stopped, Arrested, and Questioned

{¶ 4}    One week after the suppression hearing in this case, the trial court made the following findings in open court:

> Now going into the substance of those conclusions, I note that [Dayton Police] Detective [Patrick] Bell and also [Dayton Police] Detective [Ryan T.] Halburnt on November 28th, 2012, were partners assigned to the Dayton Police Department's street crimes unit, with this unit being an arm of the department's narcotics bureau.   Detective Bell on this date had a telephone conversation with a reliable confidential informant wherein the confidential informant informed Detective Bell about a white Chrysler 300 automobile parked in a parking lot

behind the three unit apartment building located at 435 Hunter Avenue which is located in Dayton's north side.

The CI provided the vehicle's license plate number and further indicated that the vehicle was occupied by a heavyset African American male and that this person possessed illegal narcotics. Detective Bell did not testify concerning when the telephone conversation occurred, but since the detectives immediately traveled to the indicated parking lot and they were two miles or so from the location of the parking lot, and also given the fact that the detectives arrived at the parking lot a little after 3:00 p.m., it is fair to conclude that Detective Bell's telephone conversation with the confidential informant occurred at approximately 3:00 p.m. give or take a few minutes in either direction. [On cross-examination, Bell testified that: "We were * * * probably a couple of minutes away as I recall."]

Detective Bell[,] turning to his history with the confidential informant, indicated that he was responsible for signing up the individual as a confidential informant. Detective Bell testified that in the past, this confidential informant has consistently provided information that has proven to be accurate that is reliable. Detective Bell further testified that information provided by the CI has led to the arrest of individuals on drug and weapons charges and the location and also information provided by the confidential informant has led to the finding of wanted individuals.

Detective Bell when pressed on the CI's reliability during cross-examination testified again in a credible fashion that the information

provided by the confidential informant has always proven accurate as to an individual's identity and also as to the quantity of drugs present at a particular location with the issue of quantity being not always completely accurate, but with some relatively minor variation on one side of the equation or the other.

The detectives based upon the confidential informant[']s information decided to travel to the parking lot behind 435 Hunter Avenue to investigate. Detectives were driving an unmarked Dayton Police Department vehicle. Each detective wore a vest marked with the word police on the vest. Further, each detective's badge was attached to a lanyard and was worn around each detective's neck.

The detectives pulled into the alley behind 435 Hunter. The entry was from the north with the detectives traveling from the north towards the south. The involved parking lot is to the east, that is to the detectives' left as the detectives approached the parking lot.

The detectives as they approached observed a white Chrysler 300 in the parking lot. The detectives further observed a heavyset African American male occupying the vehicle. Further, as previously noted, a white female was positioned near the vehicle but each detective has a different recollection concerning her location. And that's already been outlined previously.[1]

The detectives further confirmed that the license plate number provided by

---

[1] In previously determining that it found the officers' testimony credible, and Jones's testimony not credible, the trial court noted that the officers differed in their recollections concerning on which side of the vehicle the female was standing, but concluded that this single discrepancy did not render the rest of their testimony other than credible.

the confidential informant matched the license plate number of the Chrysler 300 that was observed in the parking lot behind the apartment complex at 435 Hunter Avenue. The detectives parked their vehicle some 15 feet from the Chrysler 300. The positioning of the detectives' vehicle did not block the Chrysler 300's ability to exit the parking lot and drive from the alley.

The detectives approached the Chrysler 300 as follows. Detective Halburnt approached the driver's side window with Detective Bell crossing behind the Chrysler 300 to approach the vehicle's passenger side.

* * *

Again, Detective Bell's recollection again which I believe is probably the accurate recollection because of the detail provided and his recollection is that the female was at the driver's window and that this female as she became aware of the approaching detectives and as one would expect immediately backed away from the window that she occupied.

The detectives at this point were without doubt aggressively approaching the Chrysler 300. And they were doing so to effectuate a stop, that is a seizure of [Jones][2] who of course was the occupant of the Chrysler 300. However, the detectives at this point had not reached the vehicle nor commanded [Jones] to take or refrain from any action. [Jones] probably in response to the female moving away from the vehicle or upon hearing the detectives approach, looked over his

---

[2] Throughout this part of the transcript, the trial court consistently referred to Jones as "Mr. Evans," a name having no apparent significance in this case. When, at the conclusion of the trial court's oral announcement of its decision, this was brought to the attention of the trial court, the trial court indicated that it had intended these references to have been to Jones.

left shoulder, saw the detectives and immediately turned to his right, dipped his shoulder down and appeared to either be reaching for something or perhaps discarding some item that he had been clutching.

This action created a more than reasonable concern on the part of each detective that [Jones] was perhaps reaching for a weapon,[3] prompting Detective Halburnt to open [Jones's] door and place his hands upon [Jones] to forcibly remove [Jones] from the vehicle. Detective Bell by this time was on the passenger side of the vehicle and he observed [Jones] as he was being removed from the vehicle by Detective Halburnt. He observed [Jones] open his right hand and drop two baggies containing what Detective Bell surmised were illegal narcotics.

Detective Bell alerted Detective Halburnt of this observation with [Jones] then being immediately placed in handcuffs. The baggies were of course retrieved and it was ultimately determined that the baggies contained the illegal narcotics at issue in this case and at issue in this motion to suppress with one baggie containing heroin and with the second baggie containing cocaine.

{¶ 5}    There is evidence in the record to support these findings.

{¶ 6}    Bell read Jones his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694  (1966), from a card he kept for that purpose. Jones agreed to speak to Bell without an attorney present. Bell then asked Jones questions, which Jones answered.

---

[3]  Bell testified that he believed Jones was either trying to get a weapon to hurt them, or was trying to put a weapon or drugs in the center console.    Halburnt testified that when, after Halburnt said "Dayton police," Jones swivelled and "started messing" with the center console, Halburnt thought Jones was either retrieving or hiding a weapon or drugs.

## II.   The Course of Proceedings

{¶ 7}    Jones was charged by indictment with one count of Possession of Cocaine, a fifth-degree felony, and one count of Possession of Cocaine, a fourth-degree felony.   He moved to suppress both the evidence obtained when he was stopped and arrested, and the statements he made thereafter.

{¶ 8}    Following a hearing, the trial court overruled Jones's motion to suppress.   Jones thereafter pled no contest to both charges, and was found guilty as charged.   He was sentenced to community control sanctions for a period not to exceed five years, and his driver's license was suspended for six months, concurrently, on each offense.   Six months is the minimum mandatory license suspension for these offenses.   Jones was also assessed a supervision fee of $50, an appointed counsel fee of $130, and a "Lab Fee to the Dayton Police Department" of $125.

{¶ 9}    From his conviction and sentence, Jones appeals.   His assigned counsel has filed a brief under the authority of *Anders v. California, supra*, indicating that she has not been able to find any potential assignments of error having arguable merit.   We afforded Jones 60 days within which to file his own, pro se brief.   He has not done so.

## III.   Our Independent Review of the Record Reveals No
## Potential Assignments of Error Having Arguable Merit

{¶ 10}   The trial court gave the following as its legal reasoning for overruling Jones's motion to suppress:

Now I thought about this a lot and I've actually approached it from two different directions. But I note initially that a Fourth Amendment seizure requires and I'm quoting from the decision of the Second District Court of Appeals, [*State v. Wynn*, 2d Dist. Montgomery No. 24253, 2011-Ohio-1832, ¶ 18]. And I'm quoting from paragraph 18 of that decision. And so that decision indicates as follows.

Again a Fourth Amendment seizure "requires either (a) the application of physical force with lawful authority" or (B) a suspect's "submission to the assertion of" such "authority." In this case, as Detectives Bell and Halburnt were approaching [Jones's][4] vehicle, but before he made the described movement, which led the officers to conclude that [Jones] was perhaps retrieving a weapon, the detectives without a doubt at that point had every intent to make a seizure, to accomplish a seizure. But at that moment, at that instant, they had not made such a seizure. And again, for that conclusion, I rely upon the [*State v. Wynn*] decision which is in conformity with the decision of the United States Supreme Court in [*California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)].

So at that point, under the [*California v. Hodari D.* and *State v. Wynn*] standard, a seizure had not been accomplished because the officers – detectives had made no physical contact with [Jones] nor had [Jones] submitted to the detective' [sic] assertion of any authority. Therefore, the detectives based upon [Jones's] movement consistent with the potential retrieval of a weapon, had the

---

[4] See footnote 2.

right under the Fourth Amendment to accomplish a seizure of [Jones] to ensure their safety. The seizure led to [Jones] discarding the baggies as described and once this occurred, [Jones] lost any interest he had in the baggies and the content of either baggie.

This conclusion is reached among other reasons based on the fact that the baggies at that point were in plain view. The detectives were in a location where they had a right to be under the Constitution. And based upon that which was observed in the totality of the circumstances, the detectives immediately realized the baggies probably contained contraband.

Therefore, [Jones] was – thereafter [Jones] was advised of his Miranda rights by Detective Halburnt and [Jones] agreed to answer Detective Halburnt's questions.

Now that's the first way that I approached this, that there was no seizure until [Jones] made the movement in his car which led them to the conclusion, the reasonable conclusion under the Fourth Amendment by the detectives that he was perhaps retrieving a weapon which gave them the right at that point to finish the seizure that they had – that they were going to make in order to make sure that [Jones] was not in fact retrieving a weapon. That was prudent and reasonable conduct and sanctioned by the Fourth Amendment.

The other way to look at this though and I'm relying upon several cases including this case from the Second District Court of Appeals, [*State v. English*, 2d Dist. Montgomery No. 18648, 2001-Ohio-1548].

And this case stands for the proposition that information supplied by a reliable confidential informant when verified can act to provide a sufficient reasonable articulable suspicion of criminal activity to justify a Terry stop, a Terry seizure. [5]   And in this case based upon the information provided by the confidential informant and the reliability of that confidential informant was testified to by Detective Bell, based upon that information and then the information verified by the officers when they arrived at the scene, gave them the right again under the Fourth Amendment and pursuant to Terry to make a seizure. As they were getting ready to make that seizure we have the movement by [Jones] in the vehicle which then confirmed their right to make that seizure if for nothing else to ensure that [Jones] was not reaching for a gun.  It was done in order to ensure officer safety and that activity by the detectives was consistent with the Fourth Amendment.

And then obviously we have the situation where the drugs were dropped leading then to the retrieval of those drugs and [Jones's] ultimate arrest on the drug charges.

Now going back to the Miranda situation, again following [Jones] being arrested, he did receive his Miranda rights by Detective Halburnt and he agreed at that point to discuss the situation, to talk to Detective Halburnt.  And there is no indication in the record that [Jones's] ability to knowingly waive his Miranda rights were compromised by [Jones's] intoxication based upon either alcohol or

---

[5] *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

drugs or that [Jones] has any mental deficiency which would act to compromise [Jones's] ability to make a voluntary waiver.

It is therefore concluded as to the first prong of the test that [Jones] did in fact voluntarily waive his Miranda rights. Further there is nothing in the record to support a conclusion that [Jones] was not – that [Jones's] will was overcome by force, threats of force, false promises or anything else.

It is therefore concluded that [Jones's] waiver of his Miranda rights was a knowing and voluntary waiver since there – the waiver was both voluntary and knowing, that portion of the motion to suppress is also overruled. So the portion of the motion requesting the drugs found be suppressed is overruled. The portion of the motion requesting the suppression of any statements is also overruled.

{¶ 11} The only quibble we have with the trial court's reasoning is that we question its conclusion that Jones lost any interest in the baggies and their contents when he dropped them. Bell testified that Jones dropped them "on the driver's side floorboard." Since he did not drop them outside of the vehicle in which he was the sole occupant, it is not clear that he was thereby abandoning his interest in the baggies. Of course, Jones's assertion of an interest in the baggies at this point is not helped by his having responded to Halburnt's question about the bags of drugs he dropped that "he didn't know [what Halburnt was] talking about." But since Bell testified that he recognized the contents of the baggies as likely consisting of illegal drugs, and he communicated this to Halburnt, Halburnt had probable cause to arrest Jones at that point.

{¶ 12} Outside of this one, immaterial quibble, we find no flaw in the trial court's reasoning. We find no potential assignment of error directed to the overruling of Jones's motion

to suppress having any arguable merit.

{¶ 13}  We have reviewed the plea colloquy, and we find it to be exemplary.  Likewise, the sentencing hearing, which resulted in Jones receiving the minimum possible sentence of community control sanctions and a six-months driver's license suspension, contains nothing giving rise to any potential assignments of error having any arguable merit.

{¶ 14}  In short, after reviewing the entire record, including the pre-sentence investigation, we find no potential assignments of error having arguable merit.

## IV.  Conclusion

{¶ 15}  This court having found no potential assignments of error having arguable merit, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Marcy A. Vonderwell


Brandon Jones
Hon. Michael Tucker